**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SALMAN SALMAN,

    Plaintiff,

v.                                                Case No. 6:11-cv-779-Orl-36DAB

JANET NAPOLITANO, *et al.,*

    Defendants.
_____/

## ORDER

This cause comes before the Court on Defendants' Janet Napolitano *et al.* Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rules of Civil Procedure 12(h)(3)[1] and 12(c), filed on January 13, 2012 (Doc. 14). Plaintiff Salman Salman filed a Response in opposition on January 31, 2012 (Doc. 18), to which Defendants filed a Reply on February 13, 2012 (Doc. 21). The Motion to Dismiss is now ripe for review. Upon consideration of the parties' submissions, relevant case law, record before the Court and for the reasons that follow, the Court will grant Defendants' Motion to Dismiss.

**I.    BACKGROUND**

As alleged in the Complaint**,** Plaintiff Salman Salman ("Plaintiff" or "Salman"), a native of Syria, filed an Application for Naturalization Form N-400 ("N-400") with the United States Citizenship and Immigration Services ("USCIS") on October 16, 2009. (Complaint, Doc. 1, ¶ 10, Ex. 1). While the N-400 was pending, a USCIS officer interviewed Plaintiff in order to correct and

---

[1] Defendants cite Federal Rule 12(h)(3) in arguing that the Court lacks subject matter jurisdiction. As a responsive pleading asserting the defense of lack of subject-matter jurisdiction, the motion is more properly made under 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

update the information on his N-400. *Id*. ¶ 15. It is undisputed that Plaintiff's naturalization interview ended without his signing: (1) Part-13 of the N-400, which endorses the changes made by the USCIS officer to his N-400 application, and (2) Part-14 of the N-400, the section where naturalization applicants indicate their willingness to take the oath of allegiance. Doc. 14, Ex. A. Plaintiff's N-400 has a handwritten note stating: "Attorney advised applicant <u>NOT</u> to sign application. 10/20/10 " *Id.* (emphasis in original).

However, there is a discrepancy in Plaintiff's accounts of what transpired in this interview between his Complaint (Compl., ¶ 15), his Request for a Hearing on a Decision in Naturalization Proceedings ("N-336") (Compl. Ex. 3, p.3) and his Response in opposition to Defendant's Motion to Dismiss (Doc. 18, p.6). In his Complaint, Plaintiff alleges that:

> "[U]pon conclusion of the interview, the interviewing officer asked Plaintiff to sign the attestation of the Form N-400 without so much as numbering the changes made to the application during the course of the interview. Instead, the interviewing officer handed the form to Plaintiff and asked that he sign the attestation in Part 13 without providing Plaintiff any opportunity to review the changes which had been made during the interview and 'circled in red in the presence' of Plaintiff and his attorney. When prompted to number the changes made during the course of the interview, the officer did so and then again asked Plaintiff to sign the attestation at Part 13 without reviewing the changes made or providing his attorney an opportunity to review those changes as required by the Adjudicator's Field Manual."

Compl. ¶15. In his N-336, Plaintiff stated: "[w]hen prompted to number the changes made during the course of the interview, the officer did so and then again asked Applicant to sign the attestation at Part 13 without reviewing the changes made or providing his attorney an opportunity to review those changes." Compl. Ex. 3, p.3. Similarly, during the hearing on the N-336, Plaintiff "claimed that upon the conclusion of the naturalization interview, the interviewing officer 'handed the form' to [him] and asked [him] to sign the attestation in Part 13 of the N-400 application without providing [him] the opportunity to review the changes which had been made by the officer during the

interview." Compl. Ex. 4, p.4. Most recently, in responding to Defendant's Motion to Dismiss, Plaintiff claims that he was "handed only the signature page found in Part 13 of the Form N-400." (Doc. 18, pp. 3, 6).

On October 29, 2010, USCIS denied Plaintiff's N-400, citing three reasons: (1) Plaintiff's refusal to sign the N-400 subscribing to the numbered changes that the USCIS officer made during the interview; (2) Plaintiff's provision of false information on the N-400 application regarding his marital status in answering the question in the negative, despite his wife having filed for dissolution of marriage on March 18, 2009; (3) due to his failure to divulge his wife's filing for divorce, and sixty-two (62) traffic tickets that he received between 1991 and 2009, including twenty-three (23) tickets for excessive speeding, Plaintiff failed to demonstrate the requisite good moral character for naturalization pursuant to INA § 316(a). (Compl., Ex. 2.)

On November 19, 2010, Plaintiff filed an N-336. Compl. Ex. 3. As noted, USCIS interviewed Plaintiff on March 30, 2011 as part of its administrative review. Compl. Ex. 4. On April 21, 2011, USCIS denied Plaintiff's N-336 appeal, affirming the grounds for the agency's prior denial of his naturalization application. *Id.*

On May 9, 2011, Plaintiff filed the instant Complaint (Doc.1), seeking judicial review of his application for naturalization, which Defendants moved to dismiss. Defendants filed a Notice of supplemental authority on March 30, 2012, bringing a recent decision from the Eastern District of Michigan to the Court's attention.[2] (Doc. 27).

## II. STANDARD

To survive a motion to dismiss, a pleading must include a "'short and plain statement

---

[2] *Shweika v. DHS*, No. 09-cv-11781 (E.D. Mich. March 27, 2012); 8 C.F.R. § 335.7.

showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. at 1950. Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id*.

A defendant may attack subject matter jurisdiction in two manners: facially and factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). A facial attack to subject matter jurisdiction requires the court assess, taking the allegations of the complaint as true, if the complaint sufficiently alleges a basis for jurisdiction. Fed. R. Civ. P. 12(b)(1). By contrast, in assessing a factual challenge to subject matter jurisdiction, the court may consider matters outside of the complaint. *McMaster*, 177 F.3d at 940; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("'Factual attacks' … challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"). If a court finds at any point in the litigation that it lacks subject matter jurisdiction over an action, it must dismiss the complaint. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay

trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court may grant a 12(c) motion when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). If the 12(c) motion alleges that the complaint fails to state a claim upon which relief may be granted, it is evaluated under the Rule 12(b)(6) standard for failure to state a claim. *Strategic Income Fund, L.L.C. v. Spear, Leeds, & Kellogg Corp.*, 305 F.3d 1293, 1295, n.8 (11th Cir. 2002) (noting that when the issue is plaintiff's failure to state a claim, the standards under 12(c) and 12(b)(6) are identical).

### III.   ANALYSIS

Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(h)(3) and 12(c). Doc. 14. Because Defendants challenge the existence of subject matter jurisdiction in fact, and thus the Court will consider documents outside of Plaintiff's Amended Complaint. *See McMaster*, 177 F.3d at 940.

**A.   The Court lacks jurisdiction over Plaintiff's claim**

*1.   Refusal to sign the N-400 constituted a failure to exhaust administrative remedies*

This Court lacks jurisdiction to review Plaintiff's application for naturalization because Plaintiff failed to exhaust his administrative remedies. 8 U.S.C. §1421(c); 8 C.F.R. § 336.9; Doc. 14, p.6. The Immigration and Nationalization Act of 1952 ("INA"), 8 U.S.C. §§ 1101-1537, represents "a comprehensive and complete code covering all aspects of admission of aliens to this country." *Toll v. Moreno*, 458 U.S. 1, 13 (1982). The INA provides that a district court may only review a naturalization application "after a hearing before an immigration officer." 8 U.S.C.

§1421(c); *see* 8 C.F.R. § 336.9(d).[3] This Court cannot exercise jurisdiction over an application for naturalization until the applicant has exhausted his administrative remedies. *Escaler v. U.S. Citizenship & Immigration Serv.*, 582 F.3d 288, 292 (2d Cir. 2009) ( §1421(c), authorizing *de novo* judicial review of the denial of an application to be naturalized, requires the exhaustion of administrative remedies prior to seeking that relief.")

The Eleventh Circuit has held that an applicant has not exhausted his administrative remedies if he has not signed his application. *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247 (11th Cir. 2007); *Miller v. Tanner*, 196 F.3d 1190, 1193-94 (11th Cir. 1999). In *Mahon*, the plaintiff failed to personally sign his request for an administrative appeal and it was subsequently rejected for lack of his signature. *Mahon*, 485 F.3d at 1251. The Eleventh Circuit found that plaintiff had failed to exhaust administrative remedies by failing to personally sign the request as required by the applicable regulation, and thus was barred from seeking judicial review. *Id.*, at 1262. In *Miller,* the Eleventh Circuit explained that if a statute or regulation requires an appellant to sign his administrative grievance, such a failure would mean appellant had not exhausted administrative remedies. *Miller,* 196 F.3d at 1193, n.6. Salman, like the plaintiff in *Mahon*, failed to sign his N-400, and the applicable regulation requires attestation in order to confer naturalization. 8 C.F.R. §

---

[3] 8 C.F.R. § 336.9(d). ("A Service determination denying an application for naturalization under section 335(a) of the Act shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act [8 U.S.C. § 1421]. Every petition for judicial review shall state whether the validity of the final determination to deny an application for naturalization has been upheld in any prior administrative proceeding and, if so, the nature and date of such proceeding and the forum in which such proceeding took place.")

335.2(e).[4] Indeed, "the signature-which certifies that the signer believes the allegations asserted are true-provides the basis for bringing perjury charges against the signer." *Miller,* 196 F.3d at 1193, n.6.

Plaintiff distinguishes his case from *Mahon* and *Miller* by arguing that USCIS' affirmative obligation, outlined in the USCIS Adjudicator's Field Manual ("AFM")[5], to give Plaintiff the opportunity to review changes to his N-400, should trump or at least nullify the regulation requiring his signature. Doc. 18, pp.5-6. However, the Court is persuaded that even if the USCIS officer deviated from the AFM in the manner that Plaintiff currently alleges, it is an internal agency guideline that creates no substantive rights and does not overcome the regulation requiring an applicant's signature on the N-400. Doc. 21, p.3, n. 2; *Ibarra v. Swacina*, 2009 WL 4506544, *7

---

[4] "At the conclusion of the examination, all corrections made on the application form and all supplemental material shall be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application form. The affidavit must then be subscribed and sworn to, or affirmed, by the applicant and signed by the Service officer. The affidavit shall be executed under the following oath (or affirmation): "I swear (affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this application for naturalization subscribed by me, and the evidence submitted with it, are true and correct to the best of my knowledge and belief." Evidence received by the officer shall be placed into the record for determination of the case. All documentary or written evidence shall be properly identified and introduced into the record as exhibits by number, unless read into the record. A deposition or statement taken by a Service officer during the initial examination or any subsequent examination shall be included as part of the record on the application." 8 C.F.R. § 335.2(e).

[5] "The jurat serves as evidence that everything in the application is now true and correct. The application is one of the primary bases for your decision. At the conclusion of the examination, all corrections made on the application and all supplemental material should be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application. You should review the numbered changes that have been made to the application with the applicant so that you and the applicant are both certain that the application now contains a full and accurate record of the applicant's testimony." AFM Chapter 74(1)(2).

(S. D. Fla. 2009) ("[t]he Eleventh Circuit has held that internal agency guidelines and operating instructions do not create substantive rights and lack the force and effect of law."); *Hatian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1511 (11th Cir. 1992).

In *Shweika v. DHS*, the court found that 8 U.S.C. §1421(c), the regulation granting judicial review over naturalization applications, specifically implies that the applicant must complete the hearing, and provide all testimony deemed necessary by the USCIS. *Shweika v. DHS*, No. 09-cv-11781, (E.D. Mich. March 27, 2012); 8 C.F.R. § 335.7. In *Shweika*, the naturalization applicant walked out of his interview before it was completed: in doing so, the court found that he failed to exhaust administrative remedies and it lacked subject matter jurisdiction.[6] *Shweika*, attached as Doc. 27-Ex. 1, p.3. Defendants argue that similarly, by refusing to sign his N-400, Salman failed to complete his naturalization interview, and thus the Court lacks subject matter jurisdiction because Salman failed to exhaust administrative remedies. Doc. 14, pp. 6-7; Doc. 27, p.2; Compl. ¶ 16, Ex.4 at 1. Salman essentially argues, in opposition to Defendants' Motion to Dismiss, that exhaustion of the administrative requirement would have required him to attest to facts without certainty, and thus his situation differs from the plaintiff in *Shwieka*. Nevertheless, Plaintiff's failure to sign the N-400 in both the attestation of changes made to his personal information in Part 13 and, significantly, the allegiance requirement in Part 14 certainly constitute failure to exhaust administrative remedies.

The Court is persuaded that Eleventh Circuit precedent considers an applicant's refusal to

---

[6] The *Shwieka* court also indicated that this issue, of whether an applicant's refusal to finish a naturalization interview constituted a failure to pursue administrative remedies such that judicial review was inappropriate, was an issue of first impression. *See Shweika*, No. 09-cv-11781, at 15,16.

sign his N-400 to be a failure to exhaust administrative remedies, stripping it of subject matter jurisdiction.

> *2. If Plaintiff was given only the signature page, his failure to so state in the administrative appeal bars the Court from hearing it now.*

In both his application for a rehearing before the agency and in the hearing itself, Plaintiff claimed that the immigration officer "handed the form" to him to review and sign. (Compl. Ex. 3, p. 3; Ex. 4, p.1). Although Plaintiff did allege that the USCIS Officer asked him to sign the attestation at Part 13 without reviewing the changes or providing his attorney an opportunity to review the changes, *see* Comp. ¶ 15, he now claims, for the first time before this Court, that he was handed "only the signature page". Doc. 18, pp. 3, 6. Because Plaintiff failed to raise this specific argument at the USCIS rehearing, the requirement of administrative exhaustion bars him from raising that Claim now before this Court. *See* 8 U.S.C. § 1421(c) (district court review of naturalization application permitted only "after a hearing before an immigration officer under section 1447(a) of this title"); 8 C.F.R.§ 336.9(d) ("a [USCIS] determination denying an application for naturalization under section 335(a) of the Act shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act [8 U.S.C. § 1421(c)]"). As Defendants note, Plaintiff's remedy was to demand in the rehearing that USCIS permit him to review the entire N-400, and if they refused to seek a writ of mandamus. *See* 28 U.S.C. § 1361 ( "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United State or any agency thereof to perform a duty owed to the plaintiff."). If Plaintiff is permitted to make this claim for the first time before this Court, and thereby obtain judicial review of his application without having signed the attestations in Parts 13 or 14, this would permit applicants who do not sign their N-400

to get a *de novo* review of the merits of their naturalization application. Indeed, allowing such review frustrates the policy reasons for requiring exhaustion with the agency, such as to avoid the premature interruption of the administrative process, to let the agency develop the factual background upon which decisions should be based, to improve the efficiency of the administrative process and to conserve scarce judicial resources. *Mahon*, 485 F.3d at 1255. Therefore, the Court is satisfied that even if it takes Plaintiff's current representation of the N-400 interview as factually accurate, his failure to present it as such during the administrative process bars the Court from examining his application.

**B.     The Court need not address Defendant's Motion for a Ruling on the Pleadings**

Defendant argues that by refusing to sign Parts 13 and 14 of his N-400 application, Plaintiff not only denied this Court subject matter jurisdiction, but failed to meet the statutory requirements for naturalization under 8 C.F.R. § 335.2(e), and thus cannot state a cognizable claim. Doc. 14, pp. 8-9. Because the Court lacks subject matter jurisdiction and must dismiss this action, it need not consider whether Defendant is entitled to a judgment on the pleadings pursuant to Federal Rule 12(c).

**IV.    CONCLUSION**

Upon due consideration, Plaintiff's Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

Accordingly, it is hereby **ORDERED** as follows:

1. Defendants' Janet Napolitano *et al.* Motion to Dismiss for Lack of Jurisdiction (Doc. 14) is **GRANTED**.

2. Plaintiff Salman Salman's Complaint (Doc. 1) is **DISMISSED**.

3. The Clerk is directed to terminate all pending motions and deadlines, enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando Florida, on August 3, 2012.

Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD